Let me do my other recorder. I have two here. All right. One moment. It's case number 14-5521, United States v. Tommy Holmes. Argument not to exceed 15 minutes per side. Mr. Perry, you may proceed for the appellant. Thank you, ma'am. Please the court. I'd like to reserve three minutes for rebuttal. You may. Your Honor, this case presents a Franks issue before the court, and it revolves around essentially whether an affidavit of complaint that was filled out by a Tennessee Department of Corrections probation and parole officer was made with reckless disregard for the truth as to when Tommy Holmes was released from jail. And the actual date of release is important and vital to establishing probable cause to arrest him for violating community supervision for life because without that actual release date, there would be no crime, no misdemeanor committed if the affidavit in support of that arrest warrant did not provide information that would specify when the individual was released and, therefore, when the individual needed to report. The affidavit of complaint provided that on or about November 17, 2011, Mr. Holmes failed to report. Officer Rudd, who testified at the suppression hearing, explained that she picked that date out because she looked at the judgment of conviction, which showed that Mr. Holmes entered an Alford plea and was convicted of rape and sentenced to time served on November 14, 2011. And so she just assumed then, essentially, that three days later would be November 17, and that's when he should have reported. Let me ask you, Counselor. This is Judge Strange. Her decision was not just an assumption. Doesn't she say that she chose to use the court's order because she thought she knew that there were some problems with Thomas? Is that how it's pronounced? She thought there might be some difficulty there, so she chose what she thought would be the most assuredly correct date. It turns out that was incorrect, but how could that rise to the level of reckless disregard? Sure. It's reckless because she also testified, and this is established through her testimony but also the documents that we provided to the court in our brief, that their job has the ability to have access to documents that establish when an individual is released, and they are required to look at them and use them. The policy of the Tennessee Department of Corrections is to have these release dates entered into the Thomas system, the Tennessee Offender Management Information System, on the date of any movement of the individual, be it to a supervision or to release, and that's exactly what happened. In the Thomas documents that were available to Ms. Rudd, she would have seen, although she said she had them, she did not look at them, or at least did not look at all of them available to her. It showed her, and this is at page 274, it showed her that Mr. Holmes was released on November 28, 2011, that he will be sent home today. And so obviously, if he did not report within 72 hours, the date would then be three days after that. If the affidavit in support of the warrant to arrest Mr. Holmes simply has that he failed to report, which is, I think this is what the government is arguing, that all they need to show is that he failed to report, that's not correct. In order to establish a criminal offense, a misdemeanor, a violation of community supervision for life, the individual needs to be released and needs to not report within, according to the state statute, 48 hours, but everybody seemed to believe it was 72, and that's why the affidavit of complaint said 72. So those dates, the date of release, the time period in which the individual had to report, and then obviously the date in which they're saying this offense now has occurred because we are dealing with a date post that three-day period, all that information would need to be in the affidavit of complaint to establish probable cause to issue the warrant for Mr. Holmes' arrest. Officer Rudd and any other employee of the Tennessee Department of Corrections had that information available to him or her. They simply were reckless in choosing to disregard that information, drew up a warrant that lacked probable cause, and gave it to law enforcement so they could do what they wanted to do. Counsel, this is Judge Boggs. Call arrest Mr. Holmes. Counsel, this is Judge Boggs. Sounds like the volume has gone up in here. Can you hear us all right now? I did notice that. I can hear you a little bit better now, Judge. All right. My question is this. You used words like she knew or had but chose to disregard. I didn't see anything that said that she in fact herself looked at the later date. She had it in the sense that it was in the system, but not that she affirmatively had it in her brain and disregarded it. Is that fair or not? Well, I think her testimony would be at best that she thought the policy was that the judgment controlled and whatever the judgment said, that was more important. That turns out to be, of course, not the policy of the Tennessee Department of Corrections. The policy is you go to the Thomas documents to find out when an individual was released, not a date of a judgment of conviction. Okay, but again, correct me, but I did not have the impression that she said, I went to the system, I saw the other date, and I just thought the earlier date was better. Well, I asked her several times, wouldn't it be important to know exactly when he was released? Wouldn't it? If you had that information available to you, why didn't you look at it? And are you still there, Judge? And her response, and this is contained between page ID 270 and 274, is that she believed that she did verify it. She believed that she had verified it by looking at the judgment of conviction. Okay, I get that argument. Let me just be clear about one other thing here. If this was a case where, in effect, the date made a significant difference in the sense that they went and rousted him the very day he got out, he hadn't even had time to register because of the error, then that would be one thing that would seem like there's recklessness. But in fact, am I not right? This is all happening like two years after he's out. Under any scenario, he should have reported. It's just a question of whether they put the right date on the affidavit. Am I correct about that? You're correct, Judge, in that the reality of what occurred is apparently that Mr. Holmes did not report. But in the review of this warrant and the affidavit in support of this warrant, we're not – the review in court is not able to look at what really happened. The review in court is confined to the four corners of that affidavit and whether the information was provided therein to a neutral and detached judicial commissioner to issue the warrant. And based on the information provided to the judicial commissioner, and Officer Rudd was clear about this in her testimony, that she did not tell the judicial commissioner anything else beyond what was included in the affidavit. That did not provide enough information to establish public cause to believe that Mr. Holmes had not reported within 72 hours after his release. This is Judge Rogers. Can you hear me? Yes, Judge. Why isn't – why can't we take the word – the words honor about are in the affidavit, is that correct?  Why – honor about would presumably take into account – it doesn't mean some year. On the other hand, it doesn't mean a particular second. I mean, the scope of honor about has to do with the context of what you're talking about. So I'm not saying why this isn't, if not truthful, at least not reckless by virtue of the – by virtue of those – I don't know what you call them. Correct, Your Honor. Where it doesn't really matter as long as they didn't do it within the requisite amount of time afterwards. A month later might be honor about. Does that make sense? Do you see what I'm asking? I see what you're saying, Judge, and I would agree with you if the violation that the officer is alleging that the individual committed was something other than a time-related offense. I'm not saying – I'm suggesting it might not be a violation in context. It did happen on honor about. It just didn't happen on that particular date. The honor about should not excuse this deficient warrant. Honor about normally would be sufficient because it just has to be within a reasonable timeframe to say, judicial commissioner, based on this information, we believe that this individual has committed this offense. Honor about this time period. And the time in which the offense occurred is not exactly important. What's important is the elements or the alleged conduct that would give rise to the elements that would commit an offense. In this instance, though, because of the alleged violation being a time-related offense, not reporting within 72 hours of release, the timing is important. The timing would be elements of the offense. Pardon me. The timing is just that you have to do it within 72 hours, right? That is in the affidavit as well? And therefore, our argument is that the date of release would need to – the actual date of release would need to be in the affidavit. But it's just as much a crime if it's more than 72 hours at the end of the month as if it's more than 72 hours at the beginning of the month. Is that correct? Yes or no? I think I understand your question, Your Honor, but could you repeat that for me again? It's just as much a crime if he failed to report more than 72 hours after release at the beginning of the month than if he failed to report within 72 hours of being released at the end of the month. No matter where that 72-hour gap occurs within a month, it's still a crime. Is that correct? Could I ask the question again and then get a yes or no answer? Mr. Perry? Could I ask the question again and then get a yes or no answer? Can you hear me?  Assume that you have two time periods of several days, one at the beginning of the month and one at the end of the month. In one of them, he's released and 72 hours later, he doesn't report. The other one is at the end of the month. He's released. Within 72 hours, he doesn't report. Those are both equally criminal, aren't they? Yes or no? That is correct. All right. If they're each equally criminal and the affidavit is not clear as to which of those time periods occurs but says at the particular point in the month that sequence occurred, I don't see how that's any different from saying on or about a certain date he robbed a bank. It's on or about a certain date. And it's not an element of the offense necessarily when it happened. The indictment would just have to allege a reasonable time frame in which the bank robbery occurred. In this instance, though, if the offense is a time-related offense, it would need to be included in order to establish probable cause to believe he committed the offense. Just to be clear then, you take no comfort at all from the on or about. If it was off by one day, then the affidavit is false. Well, if it's off by one day, that's a different story. Why is it different? In this case, it's off by two weeks because they thought he would have been released the same day that he was sentenced to time served, and he wasn't. So whether it's time-related or not, it is close, but it's not exact. Correct? Well, if the affidavit had included actual release date and then it mistakenly put down November 27th instead of November 28th based on the Thomas documents, that would be an entirely different case. That would be a case in which the officer had the Thomas documents, used the Thomas documents, but then just made a typo or something, a human error. That's an entirely different situation because that affidavit would provide the necessary information for a neutral and detached judicial commissioner to find probable cause. But isn't the statement on the 7th counsel, the statement on the 17th, on or about the 17th, they failed to report, is in effect an implication that the 14th was the day that it started. And that's the date that's wrong, but the implication is the same whether they wrote in the 14th or not. Is that not also correct? The implication is that he failed to report, regardless of when it happened. I would agree, Your Honor. But in order to establish the criminal offense, the misdemeanor, the time period is essential. Okay, counsel, you don't have the red lights here, but your time's up, but we understand you reserve three minutes for rebuttal. Thank you, Judge. We'll hear from your adversary. And Mike, just start saying something. Make sure he can hear you. Good morning. This is Kevin Riggs for the United States. Can you hear? Mr. Perry, can you hear him okay? Yes, I can. Thank you. Proceed. Great. May it please the court, the district court properly denied the motion to suppress in this case. We ask this court to affirm, to work backwards a little bit on this Frank's analysis. Even if we were to assume that there was a false statement that was recklessly made, if we were to remove that phrase on or about November 17, 2011 from this warrant, it would still have enough probable cause to support the allegation that is in the arrest warrant. We simply differ from Mr. Perry on this question. The timing is important because the crime, the statute itself says, it is an offense for a person to knowingly violate a condition of community supervision. The condition of community supervision we are talking about is reporting within a 72-hour period. The timing, of course, is important. It is important that the affidavit say that he did not report within 72 hours. It still says that, even if we took that phrase out that says the date. The dates are not actually important. The timing is. And so even if we were to take that phrase out, this court should still affirm. In fact, this court can simply skip those initial steps and affirm only on that basis because he has to show that each of these prongs of the Frank's analysis are met. But then starting back at the beginning, is on or about November 17, 2011 a false statement? In a meaningful way, no. And Frank's tells us that when we're talking about this analysis of whether it's false, technical exactitude is what this court has said. Technical exactitude is not required. The truth in the warrant does not mean that every fact is absolutely necessarily correct. On or about November 17, in this case, meaningfully represents the two-week gap between November 17 and December 1, which would have been the expiration of the 72-hour period. But in order to get to this Frank's hearing, there was a determination that there was a falsity, correct? That is not correct, Your Honor. How did you get to the Frank's hearing without some allegation that there was a falsity? It's a great question. And the record indicates that the magistrate judge asked Mr. Perry, and Mr. Perry basically said, this is what we are going to argue in this hearing, that we have these records. The record indicates there was not actually a showing of the records before the court decided to have the hearing, which I think maybe is probably what is required in those cases. Nonetheless, the court, I think, decided, let's just go ahead and have the hearing. I'll allow you that benefit. So even if the hearing said there's a falsity, and I'm rebounding to say that your position would first of all be you're saying because there was no reckless disregard. That is certainly true, Your Honor. And that's actually, that, along with the question of whether that statement was false, the question of whether it was recklessly made, assuming it was false, are actually determinations that this court reviews for clear errors. This was a fairly steep hill for Mr. Holmes to climb here on appeal. I do want to respond to one thing on that recklessness question, Judge Trench. And that is, opposing counsel indicated that it's not relevant that he never reported because that's not actually in the warrant. It is not in the warrant. It's not in the affidavit. But if we're asking, and this court is looking at whether Mr. Rudd, Officer Rudd was negligent as opposed to reckless or negligent at all, it's certainly relevant to look at whether or not this gentleman had ever reported. I mean, that would be a relevant fact to determining whether she was reckless or negligent. We don't believe she was even negligent. But even if she were, even if she were, Franks demands more. And again, that's a clear error of this defendant on appeal. Franks says that just negligence and checking or reporting facts, it doesn't get you there. To be specific on that question of what Officer Rudd was looking at, on page 269 of the hearing, Officer Rudd basically stated that she looked at not only that judgment, but she looked at one of the two entries of these documents. She looked at the November 23rd date. So she had November 23rd from the Tomas database system. And then she had the criminal court judgment, which said November 14th. She did actually state she did not see the other entry in the Tomas database that indicated November 28th. So there's kind of three dates out there. She had two of them in front of her. And we've already discussed, we discussed in our brief, how she made the sensible, rational choice to rely on the criminal court judgment. She also phrased it to say, on or about. And so for all of those reasons, and each of those problems in the Franks analysis, Mr. Holmes fails, this court should affirm and could, again, affirm on any of those particular problems. Even if, and you know, even if Mr. Holmes could convince this court there was an error on the Franks question, we set out in our brief that the consent that led to the search of the apartment and the seizure of the gun, which led to the prosecution here, was really a separate kind of turn of events from the getting the warrant and arresting Mr. Holmes. I mean, if you wanted to chart what happens here, you had an investigation into this complaint by these officers, and then you had really two separate lines coming from that investigation. One that led to the getting the warrant and the arrest, and then the other, which led to going to the apartment complex, knocking on the door, and Ms. Holmes, who was the leaseholder, answering the door. Mr. Holmes, obviously, was also there, but Ms. Holmes answered the door and gave consent. That was really just a separate kind of path that was only related in that they stemmed from that initial investigation. So, on that basis... Am I incorrect on the factual record that Holmes himself answered the door and denied that he lived there? You are not incorrect. He did answer the door. He said, I don't live there. And then this is Holmes' kind of emergency. Correct. He was arrested at that point and was put in a squad car and they came back and asked for consent. So, that is what happened.  Anything else, judges? All right. Thank you, counsel. Mr. Perry, you have three minutes for rebuttal. Thank you, judge. If this court determines that that information in the affidavit of complaint should be excised, or as the magistrate judge concluded, even if we do excise it, there's still a violation, that, we submit, would be incorrect. Because without the information as to the dates, then the affidavit would only contain Officer Rudd's bare conclusion that Mr. Holmes failed to report within 72 hours. And it would be essentially akin to a bare bones affidavit that just provided Mr. Holmes violated this statute and did not provide any information to give a neutral and detached magistrate, or in this case, a judicial commissioner, the information necessary to believe that this individual committed this offense. So, those dates are important. The actual dates were available to Officer Rudd and she failed to do her duty according to the policy, not because she couldn't, that information was available to her, but because she chose not to. And that's what makes it reckless. And this is a systemic problem that's been identified and to some degree addressed by the Tennessee Department of Corrections. They're aware of this problem. And that's information that we also provided in our brief in support. So, I think counsel for the United States characterized this as perhaps negligent at best, and that would be insufficient. I would agree that just making a typo or having the information available to her, but putting down the wrong date would be a different situation. That's not the situation. This case involves information that would have established when Mr. Holmes was released, would have been available to her to put in the affidavit in support and provide probable cause to arrest Mr. Holmes. But that information was not provided and the information contained in the affidavit, therefore, does not establish probable cause. If the court agrees that the affidavit did not establish probable cause and therefore Mr. Holmes was legally arrested, the suppression of the firearm is a necessary result of that Fourth Amendment violation because that the consent that was obtained from Mr. Holmes' wife was essentially minutes after the arrest. It wasn't a separate, there was not a separate intervening event. This was all done at essentially the same time. And so there would not be any attenuation or reason to separate those two events from each other. Okay, counsel, your rebuttal time has expired unless my colleagues have any further questions. Okay, if not, thank you.